J-A02025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| NATHANIEL MCGHEE | |
| Appellee | No. 52 EDA 2014 |

Appeal from the Order Entered on November 25, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: MC-51-CR-0038021-2012

BEFORE:  PANELLA, J., LAZARUS, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED MAY 06, 2015**

The Commonwealth appeals the Philadelphia County Court of Common Pleas' order affirming the Philadelphia Municipal Court's order, which suppressed the testimony of the arresting officer in this driving under the influence ("DUI") prosecution.[1]  The municipal court entered its order as a sanction for the Commonwealth's failure to satisfy a discovery order,

---

[1]    The Commonwealth has certified that the interlocutory order from which it appeals "substantially handicaps" the prosecution pursuant to Pa.R.A.P. 311(d) (permitting the Commonwealth to appeal "as of right from an order that does not end the entire case where the Commonwealth certifies . . . that the order will terminate or substantially handicap the prosecution").  ***See*** Certification of Substantial Impairment, 6/14/2013, app'x to Petition in Support of Appeal from Ruling in Municipal Court. Although no such certification appears in the Commonwealth's notice of appeal to this Court, we will accept in its place the Commonwealth's conforming certification in the documents appended to its appeal to the court of common pleas.

effectively terminating the prosecution's case against Nathaniel McGhee. The court of common pleas, sitting as an appellate court on *certiorari* from the municipal court, affirmed the lower court's decision. After careful review, we reverse and remand for further proceedings.

The trial court has provided the following factual and procedural history of this case:

> Appellee, Nathaniel McGhee, was charged with Driving Under the influence: General Impairment / Incapable of Driving Safely ([first] offense).[1] The Municipal Court granted a motion to preclude the [arresting] officer's testimony due to the Commonwealth's failure to produce the Mobile Data Terminal (MDT) document. Notes of Testimony Motions ("N.T.M."), 5/29/2013, at 10-12. On March 5, 2013, the municipal court ordered the Commonwealth to turn over the MDT as part of discovery. *Id.* at 5. At the May 29, 2013 listing, the Commonwealth did not turn over the MDT as required. *Id.* at 11. There was no offered explanation for the Commonwealth's failure to comply with the [municipal] court's discovery order. *Id.* McGhee argued that without the MDT [d]efense [c]ounsel would be unable to adequately represent McGhee through cross[-]examination. *Id.* at 10-12. McGhee requested [that] the officer's testimony be precluded as a remedy under Pa.R.Crim.P. 573(E) for the Commonwealth's failure to comply with the discovery order. *Id.* at 11. The municipal court ordered that the officer's testimony be precluded. *Id.* at 12. The Commonwealth appealed the decision.

---

[1]   75 Pa.C.S. § 3802(a)(1).

> [The trial court] held a hearing on November 25, 2013. After oral argument, [the trial court] found that the [municipal] court was within its discretion in prohibiting the officer's testimony due to the Commonwealth's failure to produce the MDT. *Id.* at 11-12. [The trial court] thus upheld the [municipal] court's decision.

> The Commonwealth filed a timely appeal together with its [Concise] Statement of Errors Complained of on Appeal, pursuant to Pa.R.A.P. 1925(b), on December 23, 2013.
>
> * * * *
>
> The facts underlying the [municipal] court's decision are as follows:
>
> On March 5, 2013, the [municipal] court ordered the Commonwealth to produce the [MDT] and CAD[2] to the defense by the next listing. N.T.M at 5.
>
> The Commonwealth ordered the MDT from the police department on March 19, 2013, but never received it. *Id.* at 11.
>
> On May 29, 2013, the Commonwealth passed the CAD but not the MDT. N.T. Common Pleas Appeal ("N.T.A."), 11/25/2013, at 12.
>
> The Commonwealth offered no explanation for why the MDT was never provided to the defendant. *Id.* at 11.

Trial Court Opinion, 3/12/2014, at 1-3 (citations and nomenclature modified).

Notably, at the May 29, 2013 hearing before the municipal court, counsel for McGhee expressly stated that "the appropriate remedy is not to dismiss the case." N.T.M. at 11. The court nonetheless barred the arresting officer from testifying, over and above the Commonwealth's objection that "you're precluding the only arresting officer from testifying in the case. So you're, in effect, dismissing the case based on a discovery violation." *Id.* The court responded, "Well, I guess I must be doing that." *Id.*

---

[2] The record is unclear regarding what CAD stands for, but we believe it refers to Computer-Aided Dispatch.

After taking argument, the trial court found that the municipal court had not abused its discretion. Accordingly, it denied the Commonwealth relief from the municipal court's ruling. This appeal followed.

Before this Court, the Commonwealth raises the following issue:

Did the [court of common pleas], sitting as an appellate court, err in affirming an order effectively ending [McGhee's] DUI prosecution, because [McGhee] lacked an item of non-mandatory discovery that he failed to show prejudiced him and there was no evidence of egregious prosecutorial bad faith?

Brief for the Commonwealth at 2.

The events of this case substantially are governed by Pa.R.Crim.P. 573, which provides, in relevant part, as follows:

(B)    Disclosure by the Commonwealth.

* * * *

(2)    Discretionary [w]ith the Court.

(a)    In all court cases, . . . if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and the request is reasonable:

* * * *

(ii)    all written or recorded statements, and substantially verbatim oral statements, of eyewitnesses the Commonwealth intends to call at trial;

* * * *

(iv)    any other evidence specifically identified by the defendant, provided the defendant can additionally

- 4 -

> establish that its disclosure would be in the interests of justice.
>
> (E) Remedy. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, . . . or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573.[3] The defendant must "shoulder the burden of demonstrating to the trial court that the discovery information sought is material, that the request is reasonable, and that the disclosure is in the interests of justice." *Commonwealth v. Novasak*, 606 A.2d 477, 483 (Pa. Super. 1992). The defendant also must demonstrate that he was prejudiced by the discovery violation. *Commonwealth v. Causey*, 833 A.2d 165, 171 (Pa. Super. 2003) (citing *Commonwealth v. Counterman*, 719 A.2d 284 (Pa. 1998)).

Notwithstanding that the defendant seeking discretionary discovery bears a weighty burden, we also have held that Rule 573(E) "gives the trial court broad discretion in formulating remedies for a failure to comply with discovery requirements." *Commonwealth v. Galloway*, 771 A.2d 65, 68

---

[3] Various cases cited in our discussion were decided under former Pa.R.Crim.P. 305, Rule 573's predecessor. Paragraph E of Rule 573 tracks verbatim the corollary provision found at paragraph E of former Rule 305. Consequently, we rely upon case law concerning either version of the rule.

(Pa. Super. 2001). Our Supreme Court has recognized that dismissal may be an appropriate sanction for certain discovery violations:

> In some cases, under some facts, it may be appropriate for a court to dismiss charges where the Commonwealth fails to abide by an order of that court. It is absolutely necessary for a court to have the power and the tools not only to control its own docket, but also to control its own courtroom. Thus, the option of dismissal of charges is rooted in [the] common law and inherent in the authority of the judiciary.

*Commonwealth v. Shaffer*, 712 A.2d 749, 752 (Pa. 1998) (opinion announcing the judgment of the court). "However, the discretion to dismiss is not unfettered and, as it is such a severe sanction, should be used only in instances of absolute necessity." *Id.*

> In exercising its discretion to grant or deny a request for discretionary discovery, the court is to be guided by the following principle of the ABA *Standards Relating to Discovery and Procedure Before Trial*, § 1.2 (Approved Draft, 1970): "In order to provide adequate information for informed pleas, expedite trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with the protection of persons, effective law enforcement, the adversary system, and national security." Pa.R.Crim.P. 305 Comment.

*Commonwealth v. Thiel*, 470 A.2d 145, 148 (Pa. Super. 1983).

> This Court has offered the following cautionary observation:

> Dismissal of criminal charges punishes not only the prosecutor . . . but also the public at large, since the public has a reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the full extent of the law. Thus, the sanction of dismissal of criminal charges should be utilized only in the most blatant cases. Given the public policy goal of protecting the public from criminal conduct, a trial court

should consider dismissal of charges where the actions of the Commonwealth are egregious and where demonstrable prejudice will be suffered by the defendant if the charges are not dismissed.

***Commonwealth v. A.G.***, 955 A.2d 1022, 1025 (Pa. Super. 2008) (quoting ***Commonwealth v. Burke***, 781 A.2d 1136, 1144 (Pa. 2001)).    In ***Commonwealth v. Wm. Smith***, 955 A.2d 391 (Pa. Super. 2008) (*en banc*), this Court construed ***Burke*** as follows:

> [W]hile we should not minimize the ethical and legal obligations of the prosecution to comply with discovery requirements, "where there is no evidence of deliberate, bad faith overreaching by the prosecutor intended to provoke the defendant into seeking a mistrial or to deprive the defendant of a fair trial, the proper remedy for the Commonwealth's failure to disclose exculpatory materials should be less severe than dismissal."

***Wm. Smith***, 955 A.2d at 395 (quoting ***Burke***, 781 A.2d at 1144).  Thus, far more frequently we have held that a sanction that will have the effect of entirely terminating a prosecution is "a penalty far too drastic" for less than egregious violations of the rule, and found that lesser sanctions were appropriate, often in the form of providing a continuance during which the Commonwealth can comply with the discovery obligation in question. ***See Commonwealth v. Yost***, 502 A.2d 216, 219-20 (Pa. Super. 1985); ***Commonwealth v. Parente***, 440 A.2d 549, 552 (Pa. Super. 1982).

"The imposition of sanctions for a . . . violation of Pa.R.Crim.P. 305 is a matter normally within the discretion of the trial court.  Thus this [C]ourt's standard of review of the sanction imposed is whether the trial court abused that discretion."  ***Commonwealth v. Prisk***, 744 A.2d 294, 297 n.5

(Pa. Super. 1999). "An appellate court cannot find an abuse of discretion merely for an error of judgment unless, in reaching a conclusion, the trial court overrides or misapplies the law or its judgment is manifestly unreasonable." *Commonwealth v. Ashton*, 824 A.2d 1198, 1202 (Pa. Super. 2003).

Against this backdrop, the Commonwealth argues that the trial court abused its discretion in upholding the sanction of barring entirely the sole arresting officer from testifying, which, in this DUI case, is tantamount to dismissing the charges. The Commonwealth begins its argument with a tendentious series of claims that do not appear to have been asserted in clear terms during argument before the municipal court or the trial court:

> Defendant failed to show what an MDT form is, that one exists in this case, or how its absence demonstrably prejudiced him. He offered only speculation that the document might contain something he could use to cross-examine the arresting officer. Defendant also failed to assert, much less prove, egregious prosecutorial bad faith in not producing the document.

Brief for the Commonwealth at 9. After fully reviewing the transcripts of the proceedings below, nowhere do we find any indication that the Commonwealth asserted that the MDT did not exist or offer any definitive characterization of what information the MDT might contain.

At its most clear, the Commonwealth suggested that an MDT is "something that is communication when the stop is initially initiated, it's communications of where the stop might have been or what officer or what time," elaborating that "it's not prejudicial, it doesn't have any additional

things outside of" other discovered documents. N.T.A. at 8. McGhee responded that the MDT might contain more information:

> On there they can type in, hey, get me a cup of coffee, then can send messages, hey, stop that guy, stop that guy, I don't like the way he looked at me when he just passed, you know, can you grab him. . . . And again, without having it to say that there's nothing on there that isn't included in [other discovery] is just a guess.

*Id.* The Commonwealth did not contradict this description. However, the Commonwealth did attest that it had sought the requested record from the police, a curious request if the Commonwealth questioned the existence of such a document or was not acquainted with its contents. Thus, we will not consider this line of argument, which was not first pressed in the municipal or trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

More substantively, the Commonwealth relies heavily upon *Burke* and *Wm. Smith*, *supra*. Brief for the Commonwealth at 11-12, 14. Here, the Commonwealth finds more purchase. In *Burke*, the defendant and a juvenile, co-employees of a restaurant, staged a sham robbery of the restaurant. Burke and the juvenile gave consistent oral and written statements to the police describing the confabulated story of a putative robbery by other parties. Two days later, a friend of the juvenile provided a handwritten statement to investigators indicating that the juvenile had confessed his complicity in the crime. The juvenile thereafter agreed to

testify against Burke in exchange for the dismissal of all the charges against the juvenile. *Burke*, 781 A.2d at 1137-38.

Burke then was charged. Shortly thereafter, he made an informal request for pre-trial discovery and inspection. Three months passed, and then Burke filed a motion to compel discovery and inspection, demanding various specific items and categories of evidence. The Commonwealth represented to the court that it had complied with those requests. *Id.* at 1138.

At trial, during cross-examination, the juvenile indicated that he had provided a handwritten statement to investigators on the night of the crime. Burke's counsel immediately indicated to the court that he had never received such a statement. The Commonwealth responded that, to the police officers' recollections, no such handwritten statement had been taken. The prosecutor asserted that she had no such statement in her possession. *Id.*

Later, Burke requested a copy of the handwritten statement that Burke had furnished on the night of the robbery. Initially, the Commonwealth indicated that it did not have that statement in its possession, either. However, shortly thereafter, the prosecutor produced Burke's statement. When the defense expressed concern that the Commonwealth had the juvenile's statement as well, the court ordered the Commonwealth to conduct a thorough search for such a statement, and continued the trial until the following afternoon. *Id.* at 1138-39.

The following day, the prosecutor indicated that she had found the juvenile's written statement. She further admitted that she found four other items responsive to Burke's pre-trial discovery request that had not been furnished previously, including a number of investigative reports and the handwritten statement of the witness who implicated the juvenile in the crime. The trial court concluded that the Commonwealth had violated its discovery obligations, and dismissed all charges against Burke. In so doing, the trial court found that the Commonwealth had not intentionally withheld the evidence in question, but also found that the prosecution had been "grossly negligent," and had violated its due process obligation under Rule 305 and *Brady v. Maryland*, 373 U.S. 83 (1963) (obligating the prosecution to disclose to the defense all potentially exculpatory information including impeachment evidence). *Burke*, 781 A.2d at 1139.

The trial court reasoned that Burke's juvenile accomplice already had testified, had been cross-examined, and had been released from his subpoena, such that the late disclosure deprived Burke of the opportunity to effectively cross-examine the juvenile in light of that statement:

> If the non-disclosure had truly been something beyond the control of [the prosecution], then perhaps the declaration of a mistrial or some lesser remedy would have been appropriate. Here, however, the prosecution's conduct in failing to exercise the minimal level of due diligence necessary to [e]nsure that its obligations were carried out[] was so egregious [that] dismissal was the only appropriate remedy.

*Id.* at 1439-40 (quoting trial court opinion).

- 11 -

On appeal by the Commonwealth, this Court reversed. We specifically rejected the trial court's finding of gross negligence. Citing our Supreme Court's decision in **Commonwealth v. Montgomery**, 626 A.2d 109 (Pa. 1993), this Court "noted that the prosecution cannot be deemed to have violated discovery rules when, despite reasonable inquiry, it fails to discover and disclose evidence it neither possesses nor is aware of, such as evidence exclusively in police control." **Burke**, 781 A.2d at 1140. Our Supreme Court then accepted review.

Having found an undisputed **Brady** violation, the Supreme Court proceeded to address whether dismissal was an appropriate remedy under the circumstances presented:

> The "remedy" provision in [Rule 305] lists numerous appropriate courses of remedial action, such as permitting discovery or inspection, granting a continuance, or prohibiting introduction of evidence. It is notable, however, that the Rule does not authorize an outright dismissal of charges, except to the extent that the residual phrase, "or . . . such other order as [the court] deems just under the circumstances," could be said to encompass the extreme remedy of discharge. . . . [T]he precedents cited by the trial court and [Burke] support the view that the discharge ordered here was too severe. **See, e.g., Kyles v. Whitley**, 514 U.S. 419, 454 (1995) (new trial granted where net-effect of seven evidentiary items suppressed by state raised reasonable probability that disclosure would have produced different result at trial); **Giglio v. United States**, 405 U.S. 150 (1972) (prosecution's failure to disclose alleged promise made to its key witness that he would not be prosecuted if he testified for government required new trial).
>
> Thus, while it is undoubtedly true that the trial court possesses some discretion in fashioning an appropriate remedy for a **Brady** violation, that discretion is not unfettered. It must be exercised in light of the competing values weighed in the **Brady** analysis,

and in light of the teachings in prior cases involving similar concerns. *See Coker v. S.M. Flickinger Co., Inc.*, 625 A.2d 1181, 1184 (Pa. 1993) ("[D]iscretionary power can only exist within the framework of the law . . . .").

*Burke*, 781 A.2d at 1143 (citations modified).

The Court then proceeded to examine cases in which prosecutorial misconduct had been deemed so egregious as to warrant dismissal. In *Commonwealth v. Jay Smith*, 615 A.2d 321, 325 (Pa. 1992), for example, the prosecution failed to disclose physical evidence it discovered mid-trial—grains of sand found between the toes of the murdered decedent—that corroborated the defense theory that the killing had been committed in Cape May, New Jersey, by someone other than the defendant, rather than having been committed by the defendant in Pennsylvania. Making matters worse, when an investigator testified at trial that granular particles that looked like sand had been removed from the victim's body, the Commonwealth "implied that he had fabricated his testimony and the trial prosecutor recommended to his superior that he investigate the feasibility of prosecuting the state trooper for perjury." *Burke*, 781 A.2d at 1145 (discussing *Smith*). Later during trial, the state police discovered the adhesive lifters that had been used to remove and retain the sand from the victim's feet, but the prosecution continued to suppress the evidence for the next two years, while the case was on direct appeal to the Supreme Court. *Id.* at 1144-45. Our Supreme Court discharged the defendant, finding that retrial of a defendant was unwarranted "when prosecutorial misconduct is intended to provoke the

defendant into moving for a mistrial, [and] when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." **Jay Smith**, 615 A.2d at 325.

The **Burke** Court then contrasted cases of prosecutorial misconduct that did not warrant dismissal. In **Commonwealth v. Moose**, 602 A.2d 1265 (Pa. 1992), for example, the Court found that the prosecution's failure to inform the defense of a witness statement containing incriminating admissions ascribed to the defendant constituted a willful violation of Rule 305. The Court referred the matter to the Disciplinary Board, but, rather than dismissing the charges, remanded for a new trial. **See Burke**, 781 A.2d at 1145 (discussing **Moose**).

Returning to the facts at bar in **Burke**, the Court explained as follows:

> The prosecutor's conduct in the matter [then at bar did] not approach that of the prosecutor in **Moose**, let alone resemble the deliberate, bad[-]faith prosecutorial misconduct [that] warranted dismissal under **Shaffer**, **McElligott**,[4] and **Jay**

_____

[4] Despite the **Burke** Court's wording suggesting that dismissal was warranted in **Shaffer** and **McElligott**, in point of fact in neither case was dismissal upheld. **See Shaffer**, *supra* (declining to uphold dismissal where the prosecutor knowingly scheduled a vacation during the trial term during which defendant's case was scheduled to go to trial and no trial term was scheduled for the following month because the defendant was not prejudiced by the consequent delay); **Commonwealth v. McElligott**, 432 A.2d 587 (Pa. 1981) (overturning a trial court-ordered mistrial based upon prosecutors' failure to turn over inconclusive fingerprint results that might be exculpatory, explaining that, although "the record suggest[ed] that the prosecutor may have been deficient in judgment or knowledge of the law, we can hardly describe his behavior as intentional bad faith misconduct"). Consequently, we construe the Court to have intended to suggest that if

*(Footnote Continued Next Page)*

*Smith*. There is no evidence here pointing to deliberate overreaching by the prosecutor. Indeed, it is not even apparent that the undisclosed evidence differed in quality from information already made available to appellant.

* * * *

Rather than prosecutorial misconduct, it appears that this case primarily involves miscommunication between the police departments involved in the investigation and/or police mishandling of the evidence. . . . Whatever may have been the reason for the nondisclosure here, it is apparent from the record that it did not result from deliberate misconduct by the prosecutor designed to compel appellant into moving for a mistrial or to deprive appellant of a fair trial.

While this Court does not minimize the ethical and legal obligations of the prosecution to comply with lawful discovery requirements, where there is no evidence of deliberate, bad faith overreaching by the prosecutor intended to provoke the defendant into seeking a mistrial or to deprive the defendant of a fair trial, the proper remedy for the Commonwealth's failure to disclose exculpatory materials should be less severe than dismissal.

*Burke*, 781 A.2d at 1145-46 (citations modified). Accordingly, the Supreme Court reversed the trial court's dismissal of the charges and remanded for a new trial.

Against these compelling principles and precedents, which strongly favor the Commonwealth's argument in this case, McGhee begins by stressing the putative importance of the MDT evidence he seeks. He argues that the MDT may provide important information for the impeachment of the arresting officer. Brief for McGhee at 6-7. Indeed, his argument in general

*(Footnote Continued)* ───────────────

dismissal was **not** upheld in those cases, then it should not be upheld in *Burke*.

is heavy on undisputed principles regarding the importance of full disclosure, pursuant to the requirements of **Brady** and its progeny, of all potentially exculpatory or impeachment evidence. However, his case citations also are heavy on instances when sanctions less dramatic than dismissal were ordered. The lone exception is **Jay Smith**, and, as the above description makes clear, the abuses at issue in that case exceeded by orders of magnitude those alleged in this case.

In favor of dismissal McGhee offers the following contentions: (1) None of the examples of sanctions included in Rule 573(E) can remedy the Commonwealth's ongoing failure to produce the MDT, **see** Brief for McGhee at 8-9; and (2) In all of the anti-dismissal cases cited by the Commonwealth, the government eventually had furnished the previously withheld evidence, while in this case the MDT remains unproduced, **see id.** at 9-11.

In his first line of argument, McGhee contends that the court can find no further recourse in Rule 573(E)'s non-exhaustive list of options for rectifying a discovery error. First, McGhee rejects the first option, court-ordered discovery or inspection, because the trial court already took such action in this case to no avail. As for the second option, the allowance of a continuance, McGhee submits that "[a] continuance would not remedy the situation, the government could not explain its refusal to produce [*sic*]," and the Commonwealth has made no indication that it would benefit from more time to do so. Regarding the third Rule 573(E) option, barring the

admission of the undiscovered evidence, McGhee submits that he, rather than the prosecution, seeks to admit the MDT evidence in the first instance. Thus, barring its admission would amount to no sanction at all. Brief for McGhee at 8-9. Thus, considering the government's lengthy delay in satisfying McGhee's request for the MDT, the lack of diligence in seeking the information, and the Commonwealth's lack of justification, McGhee tacitly submits that dismissal is the **only** remaining remedy.

McGhee's argument excludes the panoply of alternative sanctions the court might impose in "enter[ing] such other order as it deems just under the circumstances," as per the express terms of Rule 573(E). And while the rare dismissal of a case that occurs necessarily arises pursuant to this elastic authority, that does not suggest that that option is exclusive of all other unenumerated options. Furthermore, Rule 573(E) does not prevent a court from imposing other sanctions designed, *e.g.*, to ensure compliance even in satisfying a previously unsatisfied order, such as the prior discovery order in this case. McGhee's argument in this regard proves too little.

In his second argument, McGhee contends that we should reject the Commonwealth's analysis because it is based upon cases in which the discovery ultimately was produced. It is worth noting as well, though, that all or most of those cases also were tried, unlike this case. Insofar as this case has not gone to trial, nothing suggests that the evidence in question cannot be produced upon further efforts, or that the Commonwealth will not

establish its non-existence, destruction, or unavailability despite duly diligent efforts to obtain it.[5]

Finally, we must conclude that McGhee has failed to establish the sort of extreme prosecutorial bad faith or the prejudice that would elevate this case to the point of dismissal. We are sensitive to the fact that, without the MDT in his possession, it is pointless to speculate as to how, precisely, it might contribute to his defense, if at all. However, we believe that the record does not support the drastic sanction of a suppression order that effectively terminates the prosecution. The court has at its disposal other means to obtain the report or clarify its existence and/or relevance in this matter, including, but perhaps not limited to, seeking more information from the arresting officer, a finding of contempt, or the imposition of other individual sanctions against the Commonwealth's attorney.

For the foregoing reasons, we find that the trial court abused its discretion in affirming the municipal court's order barring the Commonwealth from presenting their one eyewitness to McGhee's alleged intoxicated driving. That being said, we do not suggest that the Commonwealth's to-date none-too-diligent effort to obtain the requested information suffices to

---

[5] Except to note the Commonwealth's long delay and the apparent fact that the Commonwealth asked only once for the MDT report, McGhee does not provide a basis upon which to reject this less severe alternative, and he does not suggest that providing the Commonwealth with another opportunity to discover the MDT report would cause him undue prejudice.

end the matter, or that the municipal court erred in finding that the Commonwealth had committed a sanctionable discovery violation. We simply reject the sanction imposed as excessive relative to the discovery violation, and find it in derogation of the public interest, at least in the case's present posture.

Accordingly, we reverse the trial court's order affirming the municipal court's ruling that barred the Commonwealth from introducing the testimony of the investigating officer at trial. We remand to the trial court with instructions to remand this case to the municipal court. That court, in turn, should seek to bring the Commonwealth into compliance with the earlier discovery order by the means at its disposal, including, but not limited to, those set forth in Rule 573(E). We further stress that this ruling is not intended to bar categorically that court's discretion to revisit the drastic sanction of dismissal that we now reject, should further proceedings reveal or result in the Commonwealth misconduct that clears the very high bar our Supreme Court has established for that sanction, or one constructively effectuating that result.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/6/2015