**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Melissa Lynn ASHTON**

**Appeal of: James Donohue, Esquire**

Superior Court of Pennsylvania.

Argued Dec. 5, 2002.
Filed May 13, 2003.

Armand R. Cingolani, Butler, for appellant.

Before: HUDOCK, TODD and GRACI, JJ.

HUDOCK, J.:

██ ¶ 1 This is an appeal from an order imposing indirect criminal contempt as a sanction against Appellant, James Donohue, Esquire.[1] The right to appeal from a criminal contempt citation is immediate. *Diamond v. Diamond,* 715 A.2d 1190, 1195 (Pa.Super.1998). We reverse in part.

¶ 2 Melissa Lynn Ashton was implicated in the death of her three-year-old niece, Taylor Marie Nick. The child was pronounced dead on November 1, 2001, and a criminal complaint was filed the following day charging Ms. Ashton with criminal homicide, aggravated assault, endangering the welfare of children and recklessly endangering another person. Charles M. Nedz, Esquire, immediately began acting on Ms. Ashton's behalf without entering his appearance as defense counsel. At some point prior to January 31, 2002, Mr. Nedz ceased representation and Mr. Donohue began acting on Ms. Ashton's behalf. It is unclear when Mr. Donohue entered

the case because he did not file his appearance of record.

¶ 3 It became apparent at the preliminary hearing for Ms. Ashton that irregularities had occurred in Mr. Donohue's approach to information gathering on behalf of his client. Prior to the preliminary hearing, Mr. Donohue used subpoenas to obtain the deceased child's confidential medical records from two separate hospitals. The District Attorney objected to such conduct and, on January 24, 2002, filed a written motion seeking sanctions against Mr. Donohue's alleged abuse of the discovery process.

¶ 4 The Honorable George H. Hancher conducted hearings in the matter on the 25th and 31st of January, 2002. Subsequently, Judge Hancher found Mr. Donohue in indirect criminal contempt of court and entered the following order:

1. Attorney James F. Donohue shall immediately and forthwith seal all medical records and copies he has made thereof of the victim in this case from Butler Memorial Hospital and Children's Hospital of Pittsburgh in an envelope or envelopes as required and deliver the same to the Clerk of the Court of Common Pleas of Butler County marked that they are sealed and not to be opened without further Order of Court pursuant to this Order;

2. James F. Donohue shall pay forthwith a fine of $500.00 to the Clerk of Courts. Should he be unable to do so he shall immediately apply to this Court for a payment plan;

---

1. On March 25, 2002, the trial court entered an order separating the contempt matter from the criminal prosecution of Mr. Donohue's client, Melissa Lynn Ashton. The contempt matter was recaptioned *In re: James Donohue, Esquire* and redocketed as C.A.2002 No. 75 in the trial court. All documents forward-ed to this Court were filed under the caption and docket number for the underlying criminal matter, but with cross-references to the new docket number and caption. We have recaptioned the appeal to indicate that Mr. Donohue, not Ms. Ashton, is the Appellant.

3. James F. Donohue shall immediately enter his appearance in this case as he was directed to do at the hearing on January 31, 2002.

Trial Court Order, 2/7/02. The record discloses that Mr. Donohue entered his appearance on behalf of Ms. Ashton on February 11, 2002, in compliance with the third requirement of the above order. The record also indicates that, on February 19, 2002, Mr. Donohue filed with the clerk of courts a sealed envelope designated as containing sealed records not to be opened without further order of the trial court. The record transmitted to this Court does not disclose whether this envelope contains all of the records specified in the first paragraph of the above order.

¶ 5 On February 19, 2002, Mr. Donohue (hereafter Appellant) filed a notice of appeal from that portion of the trial court's February 7th order finding him to be in contempt of court. The trial court entered an order directing Appellant to file a concise statement of matters complained of pursuant to Rule of Appellate Procedure 1925(b). Appellant timely complied. Appellant presents three issues which have been preserved for our review:

1. Whether the court erred and committed a manifest and gross abuse of discretion in finding that the Commonwealth was a proper party to assert a violation where the Commonwealth did not have standing or privilege to raise a potential violation.

2. Whether the court erred and committed a manifest and gross abuse of discretion in finding Appellant Donohue guilty of criminal contempt in that he substituted the opinion of the District Attorney for the mental state of the Appellant in finding intentional conduct.

3. Whether the court erred and committed a manifest and gross abuse of discretion in finding James Donohue guilty of criminal contempt in that the standard for a finding of criminal contempt is beyond a reasonable doubt that Appellant, Mr. Donohue intentionally committed an act of criminal intent.

Appellant's Brief at 4 (numeration emended). We shall address the third claim first because it is dispositive of this appeal. Therefore, we need not reach Appellant's additional arguments.

¶ 6 As an initial point, we note that Appellant does not contest the propriety of the trial court's ruling insofar as it concerns the directive for him to enter his representation on behalf of Ms. Ashton. Nor does Appellant appeal from that portion of the trial court's order that directed him to turn over Taylor Marie Nick's medical records and place them under seal. This appeal concerns only the trial court's action in finding Appellant to be in indirect criminal contempt of court. The propriety of the remainder of the trial court's order is not at issue, and we make no ruling thereon.

¶ 7 Generally, an order imposing sanctions for discovery violations is interlocutory and not reviewable until the final disposition of the underlying litigation. *Diamond v. Diamond*, 715 A.2d 1190, 1193 (Pa.Super.1998). However, the imposition of a criminal sanction is collateral to the underlying proceeding in which it occurs because, by its nature, it is directed to an individual's independent conduct and not to the ultimate issues which are at stake in the action. *Id.* at 1194–95. A person's right to appeal from a criminal contempt citation is immediate. *Id.* at 1195. As discussed more fully below, the contempt finding against Appellant in the present case is in the nature of indirect criminal contempt. Thus, this appeal from the contempt finding is appealable and is properly before this Court.

■ ¶ 8 "The power to punish for contempt, including the power to inflict summary punishment, is not derived by statute but rather is a right inherent in courts and is incidental to the grant of judicial power under ... our Constitution." *Commonwealth v. Marcone*, 487 Pa. 572, 580, 410 A.2d 759, 763 (1980). A trial court's finding of contempt will not be disturbed absent an abuse of discretion. *Commonwealth v. Baker*, 564 Pa. 192, 198, 766 A.2d 328, 331 (2001). An appellate court cannot find an abuse of discretion merely for an error of judgment unless, in reaching a conclusion, the trial court overrides or misapplies the law or its judgment is manifestly unreasonable. *Id.*

■ ¶ 9 Before we can assess the propriety of the contempt aspect of the trial court's order, we first must settle whether the finding of contempt in this case constitutes civil, direct criminal, or indirect criminal contempt. The determination of whether a particular order contemplates civil or criminal contempt is crucial, as each classification confers different and distinct procedural rights on the defendant. *Lachat v. Hinchliffe*, 769 A.2d 481, 487 (Pa.Super.2001). There is nothing inherent to a contemptuous act or refusal to act which classifies the behavior as "criminal" or "civil." *Id.*

■ ¶ 10 The distinction between criminal and civil contempt is rather a distinction between two permissible judicial responses to contumacious behavior. *Id.*, 769 A.2d at 488. These judicial responses are classified according to the dominant purpose of the court. *Id.* If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. *Id.* (citing *Knaus v. Knaus*, 387 Pa. 370, 376, 127 A.2d 669, 672 (1956)). But where the act of contempt complained of is the refusal to do or refrain from doing some act ordered

or prohibited primarily for the benefit of a private party, proceedings to enforce compliance with the decree of the court are civil in nature. *Id.*

■ ¶ 11 The purpose of a civil contempt proceeding is remedial. *Id.* Judicial sanctions are employed to coerce the defendant into compliance with the court's order, and in some instances, to compensate the complainant for losses sustained. *Id.*

The factors generally said to point to a civil contempt are these: (1) Where the complainant is a private person as opposed to the government or a governmental agency; (2) where the proceeding is entitled in the original ... action and filed as a continuation thereof as opposed to a separate and independent action; (3) where holding the defendant in contempt affords relief to a private party; (4) where the relief requested is primarily for the benefit of the complainant; and (5) where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the defendant so contumelious that the court is impelled to act on its own motion.

*Knaus*, 387 Pa. at 378, 127 A.2d at 673. A consideration of the above factors leads to the conclusion that the contempt finding entered in this case was not civil in nature.

¶ 12 The trial court is empowered to punish as direct criminal contempt the misbehavior of any person that takes place in the presence of the court, thereby obstructing the administration of justice. 42 Pa.C.S.A. § 4132(3). To sustain a conviction for direct criminal contempt under this provision, there must be proof beyond a reasonable doubt "(1) of misconduct, (2) in the presence of the court, (3) committed with the intent to obstruct the proceedings, (4) that obstructs the administration of justice." *Williams v. Williams*, 554 Pa.

465, 469, 721 A.2d 1072, 1073 (1998). The behavior at issue in the present matter did not occur "in the presence of the court" and the matter cannot be deemed to implicate a direct criminal contempt. The trial court, in fact, specifically found Appellant to be in indirect criminal contempt. Findings of Fact, Opinion and Order of Court, 2/5/02, at 5.

¶ 13 A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court. *Commonwealth v. Baker*, 722 A.2d 718, 720 (Pa.Super.1998) (*en banc*), *aff'd*, 564 Pa. 192, 766 A.2d 328 (2001). To establish a claim of indirect criminal contempt, the evidence must be sufficient to establish the following four elements:

> (1) the order [in question] must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited; (2) the contemnor must have had notice of the specific order or decree; (3) the act constituting the violation must have been volitional; and (4) the contemnor must have acted with wrongful intent.

*Baker*, 564 Pa. at 198, 766 A.2d at 331. Our Supreme Court has emphasized that the order underlying a finding of indirect criminal contempt must limit the alleged contemnor's conduct in a clear and definite manner. *Id.*, 564 Pa. at 199, 766 A.2d at 332.

¶ 14 Any criminal contempt is a crime in the ordinary sense: it is a violation of the law constituting a public wrong punishable by fine, imprisonment, or both. *Diamond*, 715 A.2d at 1195 n. 6. A conviction for criminal contempt can have consequences beyond those imposed by the trial court. *Id.*, 715 A.2d at 1195 n. 8. When the contemnor is an attorney-at-law, he or she is bound by our Rules of Professional Conduct. *Id.* Engaging in conduct preju-

dicial to the administration of justice that leads to a conviction for indirect criminal contempt could result in separate disciplinary proceedings. *Id.*

¶ 15 Both direct and indirect criminal contempt trigger the essential procedural safeguards that attend criminal proceedings generally. *Id.*, 715 A.2d at 1194 (quoting *In re Martorano*, 464 Pa. 66, 77–80, 346 A.2d 22, 27–29 (1975)). With regard to indirect criminal contempt, these procedural safeguards include: the right to bail, the right to be notified of the specific accusations against him or her, a reasonable time to prepare a defense, the assistance of counsel, and the right, upon demand, to a speedy and public trial before a jury. *Id.*, 715 A.2d at 1196 n. 10. Guilt must be established beyond a reasonable doubt. *Id.* A colloquy at which the contemnor may argue his or her position is not sufficient to satisfy the strict procedural due process requirements that apply prior to a conviction for indirect criminal contempt. *Id.*

¶ 16 The certified record contains no indication that the trial court entered any order regulating the process of discovery prior to the conduct at issue in this case. The fact that Appellant violated the Rules of Criminal Procedure by the manner in which he proceeded is not the same thing as violating a clear and unambiguous court order. Furthermore, the record discloses that the required procedural steps were not followed before the adjudication for indirect criminal contempt and imposition of the fine. We therefore are constrained to vacate that portion of the trial court's sanction order imposing the $500.00 fine. *See Baker*, 722 A.2d at 721 (explicating the elements that must be proven to sustain a conviction for indirect criminal contempt). Our determination concerning the finding of indirect criminal contempt entered in February of 2002 does not limit in any way

the authority of the trial court to enter future orders governing the manner in which discovery is to be conducted in this case.

¶ 17 The discovery sanction order of February 5, 2002, is reversed as to the $500.00 fine. Jurisdiction relinquished.