J-S26039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| VICTOR JOSE FORRESTER | |
| Appellant | No. 1123 MDA 2014 |

Appeal from the Judgment of Sentence June 12, 2014
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-MD-0000609-2014

BEFORE: OTT, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED MAY 15, 2015**

Victor Jose Forrester ("Appellant") appeals from the judgment of sentence entered in the Cumberland County Court of Common Pleas following his bench trial conviction for indirect criminal contempt for violating an order entered pursuant to the Protection From Abuse ("PFA") Act.[1]  We affirm.

The trial court sets forth the relevant facts of this appeal as follows:

> Defendant and Heather Bingaman, [("Victim")], are former intimate partners who have a child together.  They are subject to mutual [PFA] orders entered against them ordering that both parties, in relevant part, "shall not abuse, harass, stalk or threaten [the other party] in any place where they might be found."  Com. Ex. 1, PFA Order.

---

[1] 23 Pa.C.S. § 6114.

On June 2, 2014, [Victim] received in the mail the final custody order from Franklin County regarding [Appellant and Victim's] son. Later that evening, at 9:06 p.m., she received a phone call from a number she did not recognize. When she answered, there was no response. One minute later, she called the number back to see if the caller would answer, but the call went to an automated voicemail system. Then, at 9:11 p.m., she received a second call from the same number with a male voice on the line saying "I'm going to fucking find you tonight and kill you, bitch." She recognized the voice as that of [Appellant].

After receiving the threatening phone call, [Victim] contacted police and an officer came to her residence to file a report. At that time, she showed the officer her phone's call log detailing the calls she received that evening.

Early the next morning, at roughly 12:07 a.m., on June 3rd, the Victim heard [Appellant's] voice outside of her home and saw him with two other men across the street from her residence. She again called the police. Officer Christopher Palamara, of the Shippensburg Borough Police Department, responded to the call. After receiving a description of [Appellant's] location from [Victim], Officer Palamara found him shortly thereafter and confronted him. The Officer testified that as soon as he exited his patrol vehicle, [Appellant] immediately became aggressive and began yelling and cursing. The Officer also detected the odor of alcoholic beverages coming from [Appellant]. The Officer then took [Appellant] into custody and confiscated two cell phones he had on his person. Later, while holding [Appellant's] cell phones, the officer called the phone number reported by [Victim] as the source of the threatening call. One of [Appellant's] phones immediately lit up and began to vibrate indicating it was the source of the threatening call.

At the time of the hearing, [Appellant's] counsel noted that the only call on his cell phone's call history for June 2,

2014 was one missed incoming call at 9:07 p.m.[2] [Appellant] denied deleting the record of his outgoing call history, [al]though he acknowledged that it was possible for him to do so. [Appellant's] counsel further noted that at the time of the hearing, [Appellant's] cell phone had no record of [his] alleged threatening calls to [Victim]. According to [Victim], the reason for this was that her phone only retains a call history for three days. Nonetheless, the presence of those calls on her phone's history on the night of the alleged calls was corroborated to by the testimony of Officer Palamara who had inspected the phone during his investigation of the PFA violation.

As to [Appellant's] presence in the vicinity of [Victim's] residence that night, he testified that he was merely trying to demonstrate to his two companions the physical location of the events leading up to his previous PFA violation.

At the close of testimony, the court made several credibility findings on the record and found the evidence demonstrated beyond a reasonable doubt that [Appellant] had violated the terms of his PFA.

Trial Court Opinion, filed September 17, 2014, at 1-3 (citations to the record and unnecessary capitalization omitted).

On June 10, 2014, the court conducted a bench trial, convicted Appellant of indirect criminal contempt for violating the terms of his PFA, and sentenced Appellant to 3-6 months' incarceration.[3] On July 8, 2014, Appellant timely filed a notice of appeal. On July 9, 2014, the court ordered

_____

[2] This missed call was from Victim.

[3] The court also found Appellant had violated the terms of his parole for a previous charge and directed him to complete AMEND, a non-violence program, and abstain from the possession and consumption of alcoholic beverages and illegal narcotics during the term of his parole.

Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and he timely complied on July 29, 2014.

Appellant raises the following issue for our review:

> DID THE COURT ERR WHEN FINDING THE COMMONWEALTH PRESENTED BEYOND A REASONABLE DOUBT EVIDENCE THAT [APPELLANT] VIOLATED AN ORDER OR DECREE OF COURT OUTSIDE THE PRESENCE OF THE COURT?

Appellant's Brief at 7.

Appellant argues the Commonwealth failed to present evidence of his intent to be at Victim's residence because there was no evidence that Appellant knew where Victim lived. Further, he claims that he did not make the phone calls to Victim and that there was insufficient evidence to conclude Appellant violated the PFA volitionally and with wrongful intent. We disagree.

"Whether sufficient evidence exists to support the verdict is a question of law; thus, [an appellate court's] standard of review is *de novo* and [its] scope of review is plenary." *Commonwealth v. Patterson*, 91 A.3d 55, 66 (Pa.2014) *cert. denied sub nom.* *Patterson v. Pennsylvania*, 135 S. Ct. 1400 (2015). When examining a challenge to the sufficiency of evidence, we employ the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence

and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Hansley***, 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied*, 32 A.3d 1275 (Pa.2011) (quoting ***Commonwealth v. Jones***, 874 A.2d 108, 120-21 (Pa.Super.2005)).

Indirect criminal contempt is found when a "violation of an Order or Decree of court occurred outside the presence of the court." ***Commonwealth v. Padilla***, 885 A.2d 994, 996 (Pa.Super.2005), *appeal denied*, 897 A.2d 454 (Pa.2006). "Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order." ***Commonwealth v. Brumbaugh***, 932 A.2d 108, 110 (Pa.Super.2007) (quoting ***Id.*** at 996).

To establish a claim of indirect criminal contempt, the Commonwealth must prove the following four elements:

(1) the order [in question] must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct

prohibited; (2) the contemnor must have had notice of the specific order or decree; (3) the act constituting the violation must have been volitional; and (4) the contemnor must have acted with wrongful intent.

*Commonwealth v. Ashton*, 824 A.2d 1198, 1203 (Pa.Super.2003) (quoting *Commonwealth v. Baker*, 722 A.2d 718, 721 (Pa.Super.1998) (*en banc*), *affirmed*, 766 A.2d 328 (Pa.2001)).

An act is volitional if it is knowingly made. *Brumbaugh*, 932 A2d at 110. Wrongful intent can be imputed by the substantial certainty that a defendant would be in contact with a victim, in violation of a PFA order. *Id.*

Here, Appellant concedes the PFA order prohibited him from contacting Victim. The Commonwealth presented testimonial evidence that Appellant made a threatening phone call to Victim and was then present in her neighborhood. Victim testified that she heard Appellant's voice over the phone and a police officer testified that he looked at Victim's call log on her phone shortly after she had received the call and saw Appellant's number. After later apprehending Appellant, an officer called the number and Appellant's phone rang. Further, an officer testified that he and another officer found Appellant in Victim's neighborhood shortly after she reported his presence there. Although Appellant testified that he did not know where Victim lived, he did not make the call, and his call log did not show his call to Victim, he admitted to being in Victim's neighborhood and being able to erase numbers from his call log. The trial court was free to believe all, part or none of the evidence, and it chose to believe Victim and the police

officers. When viewed in the light most favorable to the Commonwealth, there is sufficient evidence to find every element of the crime of indirect criminal attempt beyond a reasonable doubt. *See Hansley, supra.*

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/15/2015