J-A13014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CLAIRE A. RISOLDI | |
| Appellant | No. 1864 EDA 2016 |

Appeal from the Judgment of Sentence June 10, 2016
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-MD-0001604-2016
CP-09-MD-0001605-2016

BEFORE: LAZARUS, J., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 17, 2017**

Claire Risoldi appeals from the judgment of sentence, entered in the

Court of Common Pleas of Bucks County, following her conviction for indirect

criminal contempt.  42 Pa.C.S. § 4132.  After review, we affirm.

The trial court summarized the factual history of this case as follows:

> On October 22, 2013, a fire destroyed the residence known as
> []Clairemont[] which was the home of [Risoldi], her since[-
> ]deceased husband, her son and daughter-in-law.  As this was
> the third fire in less than five years, an investigation was begun.
> Due to the alleged prominence of defendant and her family in
> Bucks County politics, the District Attorney of Bucks County
> requested that the Attorney General's office [("AG")], handle the
> case.  While the AG was presenting its case to the 35th Statewide
> Investigating Grand Jury, defendant and other defendants not
> listed in this caption were pursuing civil claims against the

_____

[*] Former Justice specially assigned to the Superior Court.

insurer of []Clairemont[], AIG, for refusing to pay damages pursuant to the coverage policies in place at the time of the fire.

The AG presented to the grand jury evidence that [Risoldi] had, among other things, engaged in conduct that constituted witness intimidation. The AG asserted that she intimidated AIG's representative, Mr. O'Keefe, on August 14, 2014[,] when there was a meeting at a bank to look at jewelry. The AG also presented evidence to the grand jury that [Risoldi] had engaged in conduct that would constitute witness intimidation of [another witness] Tina Mazaheri, Esquire.

The grand jury returned a presentment that recommended [Risoldi] be charged with witness intimidation of [O'Keefe] and [Mazaheri]. Following a preliminary hearing, [Risoldi] was held for court on those charges.

The AG believed that [Risoldi] was aware that it was presenting its case against her to the grand jury[,] and that she was trying to influence the testimony of [O'Keefe] and [Mazaheri] before the grand jury. [Risoldi] has attended all court proceedings and I speak loud enough that only the hearing impaired would miss what I say. At my first meeting with the parties and their counsel I stated:

> [I]ntimidation, from this moment forward – I'm old school. Old school to me means that we conduct ourselves professionally. It means that counsel control their clients. It means that counsel for the Attorney General control police officers, etcetera.
>
> Cases in my view are tried in courtrooms. They are not tried in the press. And if there is anything that smacks of witness intimidation from this point forward, I assure you, it will be dealt with very swiftly and, if established, very severely.

\* \* \*

When one of the AG's investigators went to interview a witness, Mr. Foris, it was learned that [Risoldi] and her investigator had **both** contacted [Foris]. The AG charged them with witness intimidation. I conducted the preliminary hearing and held her for court on that charge. I did **not** grant the AG's request to

- 2 -

revoke and/or increase her bail despite the admonition I had stated on March 2, 2015.

\*     \*     \*

In January of 2016, the AG became aware that [Risoldi] had contacted a witness, Ms. Greenberg. The AG filed another motion to revoke [Risoldi's] bail and a hearing was held on February 8, 2016. During the hearing it became evident that [Risoldi] was the beneficiary of the AG being unable to establish that she was aware that [Greenberg] was a potential witness at the time of contact. . . . I did not want her to again be the beneficiary of any misunderstanding as to who was covered by the term "witness" or what would constituted "contact." In the following comments, I set forth what I believed would clarify improper contact:

> THE COURT: While we are mulling over what we did or did not get, Mr. Connolly, I have the statute in front of me. Tell me what section of the statute [Risoldi's] contact violated. ***Clearly, she violated the spirit of what the Court intended, and that might be more properly viewed under a contempt analysis than it is under a statutory analysis***.
>
> Believe me, I'm looking to help you, but when I look at [Section 4952], I'm very hard pressed to find where the conduct crosses the line based on the averments of the petition.

> and

> THE COURT: ***But what about the contempt***? Mr. McMahon, I, to some extent, feel sorry for you, trying to control someone who apparently is uncontrollable. What's your answer? ***The clear intent of the court was no contact.***
>
> Mr. McMahon: I agree with that, and ***the clear intent of her attorney was no contact also***, so it's not – it was a multi-layered communication.

> and

THE COURT: ***So that going forward, any contact by any means known or that might become known to Ms. Risoldi's fertile mind will result in a contempt proceeding*** and, of course, you will remind her that contempt is punishable by jail and that she just might find herself awaiting trial sitting in the Bucks County Prison.

Mr. McMahon: Judge, I think that that is an agreeable situation, and ***to say that what you have just said, obviously in her earshot, is not something I have not said within her earshot***, would also be agreeable.

It is of no help to anybody, myself included, to have anybody going out and talking to any witnesses at all. I have explained that to her, and I think we now know that when we say anybody that is even mentioned in the discovery, whether they be the friend of a person mentioned in discovery, whether they be anybody related to somebody mentioned in the discovery would all be included in that prohibited-to-speak-to list going forward.

I would totally agree that, and, in fact, it would be fair that if, in fact, she does speak to one of those people from this day forward, I don't think I would even file a response.

In April[] 2016, the AG learned that [Risoldi] was having subpoenas served on witnesses for her upcoming trial. Her action prompted the AG to file this motion to hold her in contempt. A hearing was held on June 10, 2016 and I found her to be in contempt and imposed a jail sentence prompting this appeal.

Trial Court Opinion, 11/15/2016, at 1-4 (internal citations omitted) (emphasis in the original).

On June 10, 2016, the lower court found Risoldi guilty of indirect criminal contempt and sentenced her to thirty days' incarceration

pursuant to 42 Pa.C.S. § 4136(b).  On June 14, 2016, Risoldi filed a timely notice of appeal.  On August 9, Risoldi filed a court ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  On appeal, Risoldi raises the following issue for our review:

> Whether [Risoldi] did not violate the order of court and record of order and the record of contempt proceedings shows no such violation no contempt as a matter of law.  The evidence is insufficient as a matter of law to sustain the charge of criminal contempt.  The evidence clearly shows that the defendant never had any contact with any witnesses that were prohibited in [the Honorable Thomas G. Gavin's] Order?

Brief of Appellant, at 5.

The following standard of review guides this Court when presented with a challenge to the sufficiency of the evidence:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.  Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.  Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty.  Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence.  Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence.  Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most

- 5 -

favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Pettyjohn***, 64 A.3d 1072, 1074-75 (Pa. Super. 2013) (internal citations omitted).

Section 4132 provides, in relevant part:

**§ 4132. Attachment and summary punishment for contempts.**

The power of the several courts of this Commonwealth to issue attachments and to impose summary punishment for contempts of this court shall be restricted to the following cases:

\* \* \*

(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

41 Pa.C.S.A. § 4132(2). The charge of indirect criminal contempt consists of a claim that a violation of an order or decree of the Court occurred outside the presence of the court. ***See Commonwealth v. Ashton***, 824 A.2d 1198 (Pa. Super. 2003). To prove indirect criminal contempt, evidence must be sufficient to establish the following: (1) the order in question must be definite, clear, specific, and leave no doubt or uncertainty in mind of person to whom it was addressed of conduct prohibited; (2) the contemnor must have had notice of specific order or decree; (3) the act constituting violation must have been volitional; and (4) the contemnor must have acted with wrongful intent. ***See id.*** The minimum intent required to prove criminal contempt is a volitional act done by one who knows or should

reasonably be aware that her conduct is wrongful. *Commonwealth v. Debose*, 833 A.2d 147, 149 (Pa. Super. 2003). However, this Court has established that direct intent is not necessary where a reckless disregard for the directions of the court can be proven. *Id.*

The record indicates Judge Gavin's order was definite, clear and specific and left no doubt or uncertainty in the mind of either Risoldi or her counsel. On February 8, 2016, during a hearing related to the Commonwealth's motion to revoke bail based on witness intimidation, Judge Gavin stated the following: "Any contact by any means known or that might become known to [Risoldi's] fertile mind will result in a contempt proceeding, and you will remind her that contempt is punishable by jail and she just might find herself awaiting trial sitting in the Buck County Prison." N.T. Hearing, 2/8/16, at 59. The lower court's directive was unambiguous; Risoldi was present in the courtroom during the hearing and her counsel acknowledged on the record an understanding of the order. *Commonwealth v. Brown*, 622 A.2d 946 (Pa. Super. 1993) (in order to be guilty of criminal contempt contemnor must have notice of specific order).

Despite the lower court's directive, Risoldi, personally and without the assistance of Attorney McMahon, proceeded to have a series of subpoenas served on the following parties: (1) Buckingham Township Police Department, (2) the Bucks County District Attorney's Office, (3) AIG/Chartis Insurance Company, (4) AIG/Chartis' insurance

defense counsel, (5) the Buckingham Township Fire Marshall's office, (6) the Midway Volunteer Fire Company, (7) the Lingohocken Volunteer Fire Company, (8) the lead Office of the Attorney General ("OAG") prosecutor David Augenbraun, and (9) the records custodian for the OAG.[1]  N.T. Trial, 6/10/16, at 12.  Risoldi does not contest that she personally participated in the preparation and serving of the subpoenas.[2]  Moreover, Risoldi' counsel, Attorney McMahon, informed the OAG that the subpoenas were illegitimate.  N.T. Trial, 6/10/16, at 17.

Upon review, we can discern no abuse of the lower court's discretion in finding Risoldi to have been in indirect criminal contempt of the court.  *Commonwealth v. Padilla*, 885 A.2d 994 (Pa. Super. 2005) (once trial court has made finding of indirect criminal contempt,

_____

[1]  The Commonwealth avers that the subpoenas were intimidating in nature, including one that included the following language:

> Personnel file of J.R. Landis (who, after years of seeking a promotion but not getting it, was promoted between his two times testifying at the Grand Jury in our case, remember that he was promoted by Steve Daniels, the police chief and 60+ year veteran of the Midway Fire Department).

N.T. Trial, 6/10/16, at 14-15.

[2]  Risoldi avers that there is insufficient evidence that she served the subpoenas in bad faith.  *See Holt v. Virginia*, 381 U.S. 131 (1965); *In re Zalkind*, 872 F.2d 1 (1989).  This argument is unavailing.  Risoldi acted with reckless disregard of the directions of the court when she subpoenaed the aforementioned parties.  *Dubose*, *supra*.

Superior Court will not disturb its decision absent abuse of discretion).

***Ashton***, ***supra***.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/17/2017