J-S37012-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CEDRICK MCMILLIAN | : | |
| | : | |
| Appellant | : | No. 3178 EDA 2019 |

Appeal from the Judgment of Sentence Entered October 8, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0018491-2019

BEFORE: SHOGAN, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SHOGAN, J.: **FILED DECEMBER 09, 2020**

This is an appeal from the judgment of sentence entered after Appellant, Cedrick McMillian, was found guilty of indirect criminal contempt for violating an order entered pursuant to the Protection From Abuse Act ("PFA"), 23 Pa.C.S. § 6101, *et seq.*[1]  A finding of indirect criminal contempt is final and immediately appealable.  ***Commonwealth v. Ashton***, 824 A.2d 1198, 1201 (Pa. Super. 2003).  For the reasons set forth below, we affirm.

The trial court summarized the history of this case as follows:

> Complainant [Cedrick McMillian, Sr., Appellant's father ("complainant")] testified that on July 11, 2019, he was sitting on the porch at a friend's house - on the same street as his own house - when he saw the [A]ppellant on the front porch of his house. Complainant told [A]ppellant, "Don't do it," intending to warn him away, but [A]ppellant ignored his warning and proceeded up the street to approach complainant where he was sitting with his friend.  Appellant then spoke to complainant to tell him about a

---

[1]  23 Pa.C.S. § 6114.

previous altercation that had occurred earlier. Complainant then walked back to his own house and [A]ppellant then followed him and sat on his porch.

As [A]ppellant continued to talk about the previous trouble he was involved in, a group of men came up to [A]ppellant and started assaulting him. Complainant began to defend [A]ppellant but was knocked over a railing. After the men left, instead of leaving the premises and the neighborhood, [A]ppellant entered complainant's home despite complainant saying he was not allowed in the house. Once [A]ppellant entered the home, complainant called the police and filed a report.

Police arrested [A]ppellant that same day on charges of contempt for violation of a PFA order. On October 8, 2019, the undersigned presided over a non-jury trial at which complainant testified credibly.

Appellant also testified at trial. He attempted to explain that his violation of the PFA order was somehow justified because he had been previously assaulted down the street from complainant's residence. Appellant stated that after the initial confrontation he was "sore," but "not injured," and he ran to complainant's home to explain what had happened. Appellant claimed that he had called the police after the second confrontation and admitted to using his key to enter complainant's residence.

On cross examination, [A]ppellant admitted that he was aware that he was prohibited from being on complainant's property. To the extent that [A]ppellant's testimony conflicted with the testimony of complainant, this [c]ourt found that complainant was more credible than . . . [A]ppellant. Moreover, this [c]ourt held that [A]ppellant's criminal conduct was not justified pursuant to section 503 of the Crimes Code, 18 Pa.C.S.A. § 503.

At the conclusion of the trial, this [c]ourt found [A]ppellant guilty of indirect criminal contempt for violation of a PFA order or agreement graded as a summary offense and sentenced him to six months of probation supervised by the domestic violence unit of the Philadelphia probation department. Appellant filed this timely appeal on November 4, 2019.

Trial Court Opinion, 2/14/20, at 2–4 (record references omitted).

Appellant raises the following issue for appellate review:

Was not the evidence insufficient to support the conviction on the charge of contempt for violating a protective order in that the Commonwealth failed to prove that [A]ppellant intended to stalk, harass, threaten, attempt to threaten or use any physical force against the complainant, his father, and as any contact that [A]ppellant had with his father was justified under 18 Pa.C.S. § 503, necessity, as [A]ppellant was physically assaulted by a group of men on the street near his father's house and was looking for a safe haven and help from his father?

Appellant's Brief at 3.

Appellant challenges the sufficiency of the evidence supporting the trial court's finding of indirect criminal contempt and alternatively contends that he has established that his actions were justified under 18 Pa.C.S. § 503. In addressing Appellant's arguments, we adhere to the following standard of review:

We review a contempt conviction for an abuse of discretion. We rely on the discretion of the trial court judge and are confined to a determination of whether the facts support the trial court's decision. In reviewing whether the evidence was sufficient to support the conviction, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all the elements of the offense beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. Finally, the trial of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Felder***, 176 A.3d 331, 333-334 (Pa. Super. 2017) (citations, quotation marks, and brackets omitted).

Appellant's conviction arose from violations of a PFA order entered against him on July 10, 2019. In relevant part, the order directed that:

> 1 DEFENDANT SHALL NOT ABUSE, STALK, HARASS, THREATEN, OR ATTEMPT OR THREATEN TO USE PHYSICAL FORCE AGAINST PLAINTIFF OR ANY OTHER PROTECTED PERSON IN ANY PLACE WHERE THEY MIGHT BE FOUND.
>
> 2 DEFENDANT IS COMPLETELY EVICTED AND EXCLUDED FROM THE RESIDENCE AT:
>
> 3523 N 11TH STREET
> PHILA, PA 19140
>
> OR ANY OTHER RESIDENCE WHERE PLAINTIFF OR ANY OTHER PERSON PROTECTED UNDER THIS ORDER MAY LIVE. EXCLUSIVE POSSESSION OF THE RESIDENCE IS GRANTED TO PLAINTIFF. DEFENDANT SHALL HAVE NO RIGHT OR PRIVILEGE TO ENTER OR BE PRESENT ON THE PREMISES OF PLAINTIFF OR ANY OTHER PERSON PROTECTED UNDER THIS ORDER.
>
> 3 DEFENDANT IS PROHIBITED FROM HAVING ANY CONTACT WITH PLAINTIFF, EITHER DIRECTLY OR INDIRECTLY, OR ANY OTHER PERSON PROTECTED UNDER THIS ORDER, AT ANY LOCATION, INCLUDING BUT NOT LIMITED TO ANY CONTACT AT PLAINTIFF'S SCHOOL, BUSINESS, OR PLACE OF EMPLOYMENT.
>
> 4 DEFENDANT SHALL NOT CONTACT PLAINTIFF, OR ANY OTHER PERSON PROTECTED UNDER THIS ORDER, BY TELEPHONE OR BY ANY OTHER MEANS, INCLUDING THROUGH THIRD PERSONS.

N.T., 10/8/19, at 9; Commonwealth Exhibit C-1 (*verbatim*).

A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court. ***Commonwealth v. Padilla***, 885 A.2d 994, 998 (Pa. Super. 2005) (quoting

*Commonwealth v. Baker*, 722 A.2d 718, 720 (Pa. Super. 1998) (*en banc*)).

Additionally,

> Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order. *Id.* at 996. As with those accused of any crime, one charged with indirect criminal contempt is to be provided the safeguards which statute and criminal procedures afford. *Id.* at 996–97 (citation omitted). To establish indirect criminal contempt, the Commonwealth must prove: 1) the Order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the Order; (3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent. *Commonwealth v. Ashton*, 824 A.2d 1198, 1202 (Pa. Super. 2003).

*Commonwealth v. Brumbaugh*, 932 A.2d 108, 110 (Pa. Super. 2007) (citation and quotation marks omitted).

Appellant maintains that the evidence was insufficient to prove that he "stalk[ed], harass[ed], threaten[ed], attempt[ed] to threaten, or use[d] any physical force against his father." Appellant's Brief at 9. Appellant specifically challenges the evidence supporting the necessary element of wrongful intent. Appellant asserts that he was not acting willfully when he visited complainant; rather he "went to his father for solace and aid after being assaulted, while the threat of danger was still looming." Appellant's Brief at 14.

"When reviewing a contempt conviction . . . we are confined to a determination of whether the facts support the trial court decision. We will reverse a trial court's determination only when there has been a plain abuse of discretion." *Brumbaugh*, 932 A.2d at 111 (citation omitted).

The trial court resolved Appellant's sufficiency argument, as follows:

> For the purposes of the indirect criminal contempt statute, "wrongful intent" means that it was a defendant's intention to "truly" violate a PFA order. *Commonwealth v. Haigh*, 874 A.2d 1174, 1178 (Pa. Super. 2005). Generally, wrongful intent can be "imputed" on a defendant "by virtue of the substantial certainty" that the action he or she takes will result in the violation of a PFA Order. *See, e.g., Commonwealth v. Brumbaugh*, 932 A.2d 108, 111 (Pa. Super. 2007) (finding wrongful intent where defendant, at plaintiff's request, agreed to travel with plaintiff while a PFA order was in effect).
>
> Based on this definition, [A]ppellant demonstrated wrongful intent when he knowingly went to complainant's residence; when complainant told him "don't do it" and [A]ppellant continued walking towards complainant to talk to him; when [A]ppellant followed complainant back to his home; when he used his key to get inside the home despite complainant telling him to leave an additional time; and when, on cross examination, [A]ppellant admitted that he knew he could not be at complainant's house. This [c]ourt found [A]ppellant's repeated disregard of the PFA order, while completely aware that he was in fact violating the order, demonstrated the requisite wrongful intent.
>
> While it is also true that the final PFA order against [A]ppellant also directed that he not abuse, harass, stalk or threaten complainant, the Commonwealth was not required to prove that [A]ppellant violated that provision of the PFA order because it clearly proved that he violated other provisions of the final PFA order. Thus, in this case, "wrongful intent" does not mean, as [A]ppellant claims, an intent to stalk, harass, threaten, attempt to threaten or use any physical force against the complainant. That is simply not an element of this offense and no relief is due.

Trial Court Opinion, 2/14/20, at 8–9.

In contending that the evidence was insufficient to establish a wrongful intent, Appellant directs our intention to **Commonwealth v. Haigh**, 874 A.2d 1174 (Pa. Super. 2005). Appellant's Brief at 14. In **Haigh**, the PFA order

prohibited a husband from having any contact with his wife for a specified period. *Haigh*, 874 A.2d at 1175. During that period, he was brought before the court in shackles to answer for an alleged indirect criminal contempt charge. While in the courtroom, still shackled, the husband shuffled slightly towards his wife, and asked her about her health. A deputy sheriff quickly pulled the husband back and charged him with indirect criminal contempt. *Id.* at 1176. In vacating the judgment of sentence, this Court reasoned that the husband had been brought into a form of contact with his wife by virtue of the PFA hearing on a separate charge. *Id.* at 1177. We concluded that a reasonable person could believe, and the husband did believe, that the PFA order was relaxed to some extent in the courtroom context, "especially where Appellant was shackled and the victim was protected by an armed deputy sheriff." *Id.* at 1177. Moreover, the wife testified that she had not felt threatened by the husband's actions and words under the circumstances. *Id.* at 1176.

We find *Haigh* to be inapposite to the matter before us. Unlike in *Haigh*, the circumstances in the case *sub judice* supplied no reason for Appellant to believe the strict no–contact provisions of the PFA order governing his conduct were relaxed. Appellant's violation of the PFA order was, by his own admission, knowingly made. N.T., 10/8/19, at 29. Nonetheless, Appellant approached complainant after complainant admonished him: "don't do it." *Id.* at 15. He then followed complainant back

to the premises from which he was prohibited, and entered complainant's house, despite complainant telling Appellant that he was not permitted inside. *Id.* at 18.

Appellant thus violated two directives of the PFA: 1) having contact with complainant and 2) entering the premises of complainant's residence. Plainly, by approaching complainant and entering his house despite warnings not to do so, Appellant knowingly created a substantial certainty that he would violate the directives of the PFA. *See Brumbaugh*, 932 A.2d at 111 (the appellant's act was knowingly made, and wrongful intent can be imputed by virtue of the substantial certainty that by travelling with complainant in the same vehicle the appellant was violating the PFA order).

Accordingly, the facts established at the PFA hearing support the trial court's conclusion that Appellant acted with wrongful intent. There has been no abuse of discretion meriting disturbance of the trial court's findings.

Appellant next offers that even if he technically violated the PFA, he is excused from criminal liability because his actions were justified by necessity. Appellant's Brief at 16. "Justification" is defined in 18 Pa.C.S. § 503 as follows:

**(a) General rule.--**Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if:

(1) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;

(2) neither this title nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

(3) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

18 Pa.C.S. § 503.

In *Commonwealth v. Capitolo*, 498 A.2d 806 (Pa. 1985), our Supreme Court described the elements of a successful justification defense as follows:

1. that the actor was faced with a clear and imminent harm, not one which is debatable or speculative;

2. that the actor could reasonably expect that the actor's actions would be effective in avoiding this greater harm;

3. that there is no legal alternative which will be effective in abating the harm; and,

4. that the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue.

*Id*. at 809. Because justification is an affirmative defense, the defendant has the burden of proof. *Commonwealth v. Manera*, 827 A.2d 482, 485 n.7 (Pa. Super. 2003) (citation omitted).

In the instant case, the trial court found that Appellant could arguably prove that he was facing imminent danger from his attackers and that he could reasonably believe that he could avoid the harm by going to his father's house. Trial Court Opinion, 2/14/20, at 12. However, regarding the *Capitolo* third

prong, no legal alternative to violating the PFA, the trial court found the evidence wanting. The trial court reasoned:

> Appellant testified that he was carrying his cell phone during the initial altercation and that he did not call the police or anyone else. After seeing complainant at his friend's home, [A]ppellant walked over to speak with him in violation of the PFA order against him. At no point did [A]ppellant ask complainant's friend to call the police, to enter complainant's friend's home, nor did he seek transportation out of the area. Instead, he walked to complainant['']s home - where he was not permitted - and had a conversation with him on his porch.
>
> Appellant did not testify [to], nor did he introduce any evidence to prove, any sense of urgency or proving that [A]ppellant asked complainant to call the police, or that he was afraid for his safety. Appellant had a multitude of viable legal opportunities to find a safe haven that did not involve violating the PFA order. *See, Commonwealth v. Merriwether*, 555 A.2d 906, [911] (Pa. Super. 1989) (holding that the availability of legal alternatives, including the ability to contact the police, defeats a justification defense).
>
> There was no evidence in this case that [A]ppellant believed that he had absolutely no choice but to violate the PFA order to prevent some harm from happening to him. Thus, this [c]ourt properly held that [A]ppellant's actions were not justified pursuant to Section 503(a).

Trial Court Opinion, 2/14/20, at 12–13 (record references omitted).

The record supports the trial court's finding that Appellant failed to carry his burden of proof on the third prong of the *Capitolo* test for justification: namely, that there was no other legal option available to abate the threatened harm. On appeal, Appellant contends that "[g]oing to his father's house was **a** way to seek refuge and solace that could not have been met out on the streets while awaiting the police." Appellant's Brief at 18 (emphasis added).

Notably, Appellant does not claim that approaching complainant and entering complainant's property was the **only** way to avoid the harm. Nor does Appellant challenge the trial court's findings that, although Appellant was carrying a cell phone, he did not telephone the police, did not ask complainant's friend to call the police, or seek refuge in the friend's house.

The justification defense "does not arise from a 'choice' of several courses of actions; instead it is based on a real emergency." *Capitolo*, 498 A.2d at 808. It can be raised only by a defendant "who is confronted with such a crisis as a personal danger to (oneself or others), a crisis which does not permit a selection from among several solutions, some of which do not involve criminal acts." *Id.* (citation omitted).

Here, Appellant has not demonstrated that there was no legal alternative available to violation of the PFA order. *See Commonwealth v. Merriweather*, 555 A.2d 906, 911 (Pa. Super. 1989) (holding that because the defendant had the legal alternative of contacting the authorities that he could not invoke the defense of necessity). Accordingly, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/9/20

- 11 -