J-A07011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN M. MCDEVITT | : | |
| | : | |
| Appellant | : | No. 726 MDA 2023 |

Appeal from the Judgment of Sentence Entered April 5, 2023
In the Court of Common Pleas of York County
Criminal Division at No:  CP-67-MD-0003082-2022

BEFORE:   STABILE, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 27, 2024**

Appellant, Steven M. McDevitt, appeals from a judgment of sentence of three months' probation and a $300.00 fine for indirect criminal contempt for violating a Protection From Abuse ("PFA") order.  Appellant challenges the sufficiency and weight of the evidence adduced during his bench trial.  We affirm.

Carmin Breighner, the victim, testified that Appellant was the father of her daughter, I.M.  N.T., 4/5/23, at 4, 6.  Breighner obtained a PFA order against Appellant, effective from March 16, 2022 through March 16, 2023, providing that Breighner had sole custody of I.M.  *Id.* at 4-5.  The PFA order directed, "Defendant shall not abuse, harass, stalk, threaten, or attempt or threaten to use physical force against any of the above persons in any place where they might be found."

---

[*] Former Justice specially assigned to the Superior Court.

Breighner testified as follows about an incident with Appellant on November 4, 2022, while the PFA order was in effect:

> [Appellant] met me at my mother's house to give me money for part of [I.M.'s] birthday party, and as I was getting out of the car, he was getting [I.M.] out of the car. I stood up against my car towards the back, and he was holding her, and I let him have his couple minutes with her, and they were just talking quietly. And then all of a sudden he got loud and said, I'm taking you to meet somebody and I'm taking you. And he started walking off fast towards his girlfriend's car, and I said, no, you are not, and I started running in front of him. And I got in front of him, and I started taking my daughter from him, and I told him that he needs to stop and just give me her back. And I said, give me [I.M.] back now. And then he said, no, I'm taking her. And I said, stop being a, excuse my language, fucking idiot, and I just said, give me [I.M.] back. I said, you're not doing this. And he just kept saying that he was taking her. We argued a little bit more, and then he did shove me with his elbow twice during that argument. And then he came back down to the car then, to my car with her.

*Id.* at 5-6. When Appellant shoved Breighner, he had freedom of movement and could have gotten around her. *Id.* at 7. After this incident, Breighner took I.M. back into her mother's house. *Id.* Breighner subsequently called the police and informed them about the altercation. *Id.* Appellant had a previous violation from a prior PFA order. *Id.* at 9.

On November 8, 2022, Officer Adam Knepp of the Hanover Borough Police Department obtained a statement from Breighner. Breighner stated that during an exchange of birthday money, Appellant attempted to take I.M. to meet his current girlfriend. *Id.* at 11. Breighner stated that Appellant pushed her during the encounter. *Id.* Breighner showed Officer Knepp a voicemail from Appellant in which he complained about having to pay money

- 2 -

but was apologetic for his behavior, without specifying what behavior he was talking about. *Id.* at 13.

Defendant called Kristin Hardbarger, his girlfriend, to testify. Hardbarger stated that on November 4, 2022, she and Appellant were planning to give Breighner $50.00 of birthday money and decided to do it at Breighner's mother's house. *Id.* at 20. Appellant got out of the vehicle and was hugging I.M. *Id.* at 21. Hardbarger heard Appellant tell I.M. that he wanted her to meet somebody, and Appellant approached their vehicle. *Id.* Breighner began "freaking out," saying that I.M. was not going to meet Hardbarger, and threatening to take away Appellant's visits. *Id.* Breighner attempted to pull I.M. away, and Appellant held onto her, but no shoving took place. *Id.* at 22.

At the conclusion of trial, the court found Breighner's testimony more credible than Hardbarger's, held Appellant in indirect criminal contempt for violating the PFA order, and imposed sentence. Appellant filed timely post-sentence motions, which the court denied, and a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises two issues in this appeal:

1. Whether there was insufficient evidence to convict [Appellant] of indirect criminal contempt for violating a [PFA] order where there was insufficient evidence to establish [that he] acted with wrongful intent?

2. Whether the greater weight of the evidence established [Appellant] did not act with wrongful intent but rather he was merely protecting his daughter from being caught in a tugging

- 3 -

match when the alleged victim in this case wanted to prevent the daughter from seeing [Appellant's] new girlfriend?

Appellant's Brief at 5.

Appellant's first argument is a challenge to the sufficiency of the evidence. The following standards apply to this argument:

> We review a contempt conviction for an abuse of discretion. We rely on the discretion of the trial court judge and are confined to a determination of whether the facts support the trial court's decision. In reviewing whether the evidence was sufficient to support the conviction, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Felder*, 176 A.3d 331, 334 (Pa. Super. 2017).

A charge of indirect criminal contempt is a claim that a violation of an order or decree of court occurred outside the presence of the court. *Commonwealth v. Padilla*, 885 A.2d 994 (Pa. Super. 2005). "Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order." *Id.* at 996. As with those accused of any crime, "one charged with indirect criminal contempt is to be provided the safeguards which statute and criminal procedures afford." *Id.* at 996-97. To establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the

contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent. *Commonwealth v. Ashton*, 824 A.2d 1198, 1202 (Pa. Super. 2003).

Viewed in the light most favorable to the Commonwealth, the evidence—in particular, Breighner's testimony—demonstrates that Appellant shoved the victim multiple times with his elbow, constituting abuse, harassment, and an attempt to use physical force in violation of the PFA order. Although Appellant's girlfriend, Hardbarger, claimed that no shoving took place, the credibility of Hardbarger's testimony is a matter of weight, not sufficiency, *Brockman*, 167 A.3d at 38, and Breighner presented unequivocal testimony that Appellant engaged in abusive or harassing behavior.

The present case is similar to *Felder*, *supra*, in which we held that the evidence was sufficient to sustain the defendant's conviction for abusing, stalking, harassing, or threatening the victim in violation of a PFA order. In *Felder*, while attempting to re-enter her home because of a fire, the victim struggled with the defendant over a locked door. The victim attempted to unlock the door by placing her hand through the bottom window in the door, but the defendant grabbed and twisted her fingers, and they struggled over the door. *Id.* at 333. Another occupant of the house witnessed the confrontation, and saw the victim stumbling back from the door, shaking and holding her hand. *Id.* The defendant argued that there was insufficient evidence to find that he acted with wrongful intent, and that his action

amounted to a struggle over a locked door but did not rise to the level of intentional conduct required for a finding of abuse. This court affirmed the decision of the trial court, which found the testimony of the Commonwealth's witnesses to be credible. We agreed with the trial court that there was no other valid explanation for appellant's actions, and we declined to re-weigh the credibility of the witnesses. *Id.* at 334. As in **Felder**, Appellant asks this court to find that version of events credible instead of the testimony of the Commonwealth witness, Breighner. Appellant claims through his girlfriend's testimony that no shoving occurred and that he merely was trying to prevent his daughter from being injured. Appellant would have us reweigh the testimony instead of viewing it in the light most favorable to the Commonwealth. The law prohibits us from taking this step. Viewed in the light most favorable to the Commonwealth, the evidence is sufficient to show that Appellant shoved Breighner with his elbow in violation of the PFA order.

In his next argument, Appellant contends that his conviction was against the weight of the evidence, because the weight of the evidence showed that he did not act with the requisite intent. The trial court properly rejected this argument.

> A motion seeking a new trial based on the weight of the evidence is
>
> addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so

clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013).

As discussed above, Appellant's sole focus is on whether his actions were intentional. The court acted within its discretion by finding that they were. At the time of the incident, Appellant was subject to a PFA order to refrain from abusing, harassing or attempting to use physical force against Breighner. Appellant had also violated a prior PFA order. Appellant's trial involved two competing versions of what took place during the incident on November 4, 2022. Breighner testified that Appellant shoved her twice when Breighner tried to stop Appellant from taking I.M. to meet Appellant's girlfriend, Hardbarger. Hardbarger testified that Breighner attempted to pull I.M. away from Appellant while Appellant held onto I.M., but no shoving took place. The

court, as fact-finder, had the discretion to believe some, part or all of either version of the events. The court chose to believe Breighner's account that Appellant intentionally shoved her, as the court had the right to do. We find nothing about this decision that demonstrates the trial court abused its discretion such that its verdict shocks this Court's conscience. Thus, Appellant's challenge to the weight of the evidence fails.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/27/2024